Before we get started, this morning we have an administrative matter to attend to. That's part formal and part tradition. And this is the admission of a one of a Lockhart's. Gina, can you stand please? Well, Gina, it's been one year since you have been clerking for me. I know the time has gone by fast for you, but that's what happens when you're working hard. Your excellent work product has been of benefit not only to my chambers, but to this honorable court as well. I see that you've earned the respect of your colleagues, and I'm not surprised by that. The respect they have for your legal proudness, but also for your professional character. So I tell my colleagues on my left and right that before you stands in the well of this court a woman who is an excellent lawyer and will be a leading light in the U.S. legal profession. So I move for the admission of Gina H. Cremona, who is a member of the Bar and is in good standing with the highest courts of California, New York, and the District of Columbia. I have knowledge of her credentials, and I am satisfied that she possesses the necessary qualifications. Judge Bryson? Judge Reza? Your motion is granted. Now, if you would please face the clerk, and he will administer the oath. You solemnly swear that you will report yourself as an attorney, and counsel for this court, and rightly according to law, and that you will support the Constitution of the United States of America. I do. Congratulations. You're welcome. Thank you. Okay, we have a number of cases before us today. We have four cases that have been submitted on the briefs, and the court is attending to those cases. We have two cases before us on oral argument. Apple Inc. v. Content Guard Holdings, Inc., 16-2548. Counselor Unico? Yes, sir. You have reserved three minutes of your time, I take for rebuttal, and you're sharing five minutes of your time with Counselor LaMarca. Yes, sir. Okay. And on the other side, I guess you reserved two minutes of your time for it to rebut. Yes, thank you, Your Honor. Okay, well, let's get started on that. You may begin. With your permission, Your Honor, we had agreed that the government would begin, if that's all right with the court. Okay, that's fine. As you pointed out, Your Honor, I only have five minutes, so I'll try to be brief. It may please the court. This case was, the reason we're here, we filed a brief for the limited purpose of defending the agency's institution of a CBM. So this case is pre-Unwired Planet, right? Correct, Your Honor. And so the problem with this is the board still uses the incidental language, I think, that we found not proper in Unwired Planet. Do you agree? Right. Are you essentially saying that that's harmless error? I mean, I know you argued that it was kind of an alternative holding, that it would be financial in nature anyway, but I have a hard time reading that into the board's decision. Yeah, I think if you look at the final board decision, that's where the board goes on and further says that the elements in this claim are financial in nature, and therefore they qualify as a CBM. But it's still couched in the discussion of the incidental CBM language. I agree that that language is in the board decision. We don't dispute that, but we do think the board decision sufficiently articulates why this is a financial in nature type claim, and therefore it qualifies. Even if they didn't use the perfect language in their decision, we think the claim qualifies. Shouldn't it really be a question for the board to make in the first instance of whether this is financial in nature under the proper standard? Well, let me give you an example. In Versada, which is where the court determined that the board relied on the wrong incidental complementary to language, even there, Versada said, nevertheless, the claim qualifies. So similarly here, even if this language is in the board decision and there's a problem with that language, nevertheless— This one seems, to me at least, on the facts of the claims and the way they're written and the way the specification supports them, it's closer. I have a hard time thinking that this is so clearly a CBM that it would be harmless for the board to rely on the incidental language and have us go ahead and decide. I think our position is the claim qualifies. The claim meets the statutory requirement. Here, we do think it's a financial in nature claim. What is it about this claim that you think makes it financial in nature? Because there's nothing in the claims themselves that identify financial activity. I mean, the word consumer and supplier appears, but that's in the context of consumer rights and supplier rights, which is a reference, as I understand it, to the respective rights of the parties, not with respect to the activities of the consumer in the financial sense. Agreed, Your Honor. But if you read consumer and supplier and you read it in the context of the specification, what the specification talks about, and the board pointed this out in repeated places, the consumer and the supplier are transferring these rights. They call them meta rights. Let's just call them rights to music or rights to videos. There's many, many recitations of where the way that's enforced, because the claim also talks about an enforcement mechanism called a repository. The way it's enforced is collection of license fees, payment of fees, et cetera. Now, there are examples that may include others, but even if you look at it even deeper, determining by a repository whether the rights consumer is entitled to the rights specified, well, we know for a fact that this spec incorporates by reference a prior art reference called STFIC. And when you look to STFIC, STFIC says the repository is integrated with the fees and the payments. So that's not in dispute. In fact, right in the specification here, the 280 patent, it expressly says the mechanism for enforcing is the repository, and the repository that's back in STFIC is the repository. And when you read STFIC, it's all about payment of fees and using the repository to enforce the rights, the exchange. But if we are to use the specification only for purposes of determining the proper construction of the claims, then it seems to me the specification, correct me if you think this is wrong, but the specification does not tell us that the claims are necessarily to be read as if they read on financial activity, even though the specification includes allusions to financial activity. Well, if I take you to the language of the unwired planet case, which I believe we might have mentioned that earlier, what unwired planet requires us to do is it says a CBM patents are limited to those with claims that are directed to methods and apparatuses of particular types and particular uses in the practice, administration, or management of a financial product or service. Well, what we have here is we have claims that are directed to financial activity. That's exactly what we've got. That doesn't mean the claim can't It's directed to maybe a commercial transaction down the road. An incidental commercial transaction at that. The rest of the unwired goes on and points that out that just because the patent itself can lend itself or involve a potential commercial transaction, an item being sold, doesn't render the claims to be financial in nature. We agree, Your Honor, because what I think that language Why don't you walk back the language from the institution, the incidental to You didn't walk back from that in the final written decision. You just tried to build on top of it by pointing to the preamble. Not necessarily the specification. You take us to the preamble. Well, but the preamble is integrated with the body of the claim. The body of the claim is all about the relationship between the supplier and the Furthermore, the body of the claim is centrally focused on the enforcement mechanism and the enforcement mechanism, which is what this is all about. The whole purpose of this whole invention is to allow a rights holder to enforce those rights on downstream people in the chain, in the distribution chain. And the way they enforce that, if we read Stefik, which is specifically incorporated by reference and expressly referenced as that's the repository function of this claim, this claim says the repository enforces the rights. It says it right in the claim. And what is the repository? It's a mechanism used to enforce. And Stefik says the way you enforce is by collecting fees and providing fee reports. Let me give you a hypothetical. Suppose that you have a claim, a patent on a barcode reader. And the claims simply say the barcode reader, barcode and a reader that interprets the barcode. And the specification says, well, the barcode reader can be used for a variety of purposes, such as a cashier at the grocery store can use it, or you could use it to keep track of your furniture in your house or your books in your house. Would that, in your view, constitute a claim to or a patent that is directed to financial activity? I think that's a much weaker case. That's much more closer to the examples that were criticized in Unwired Planet, as well as I think the now vacated Secure Access case. Even though the specification alludes to financial activity. That wouldn't be enough. For example, I invented a chair, and the chair can sit in a bank. It doesn't qualify as financial activity. That's very easy. I invented a ditch-digging device. Well, I'm sure those are the examples. But those, it seems to me that this case, the barcode is closer to this case than those. And you're saying, I infer that you're saying that the barcode wouldn't. I think it's a lot tougher situation. I think you'd have to read a spec where the spec would have to say that it's used in that situation predominantly. Here, we know for a fact when we read this spec, when we read Stefik, and we read the language of this claim, and the purpose of this invention is predominantly in the use of enforcing rights. And the way it enforces it is through licenses and fee collection. Yes, we agree that the claim may be read to be broad enough to encompass some other activities that may not be that. But when the core of the claim is centered on the financial activity of enforcing rights through the collection of fees or other type of financial business relationships, we find it hard to believe that this does not qualify for a CBM patent, Your Honor. And I think I'm past my five minutes. I'm sorry. Please don't deprive us. We won't. Okay, so you have seven minutes, correct? Thank you. Yes, Your Honor. May it please the Court, Robert Uniquel on behalf of appellants and cross-appellees. I'd like to address two follow-up points on the CBM eligibility, if I might. First, an answer to the question of whether these claims are required to include financial activity or are directed to financial activity. Yes, they are, because not only in the preamble but in the body of the claim, it specifies a transaction involving a consumer. And the specification uses multiple words to describe use recipients. Sometimes they're called users. Sometimes they're called recipients. But it specifically states in the specification that for transactions involving consumers, that's the term it uses, it defines them as business models. So on Appendix 96 in the 280 patent, in Column 5, it actually describes typical business models and specifies that consumers are the rights recipients in a business model that uses. But it does have at least examples of non-monetary uses. Not for consumers, no, Your Honor. The other examples that are in the patent talk about recipients. They talk about users. And I agree that a general user of rights might include people that are not involved in monetary transactions. The hospital data records. I'm sorry? The hospital data records. Aren't they consumers of data? Honestly, it seems to me you're making a point you don't need to make to win this case. You're over-reading the specification. Because I did not see the distinction you're showing. Maybe you want to point out to me where it says consumers only relates to people that pay fees. Well, it's not necessarily that it's only that the consumers pay fees. But what the specification states in Column 5, Lines 39 through 52, and then Column 6, 1 through 17, is that in business models that use the invention, you have suppliers and consumers. Those are the terms it uses when it's describing business models. And that's what it is. I don't disagree with you. I mean, this specification is replete with references to licensing and fees and things like that and using this digital rights management control system for the sale of rights, digital rights. But it seems like it also has examples that aren't monetary. It does have examples of non-monetary. So obviously it's a black-letter law principle that you can claim narrower than you disclose. And here the claims are directed to a supplier and consumer relationship, not just in the preamble, but there's a second reference in the actual body of the claim elements to the consumer. So you think that they've defined consumer in a more limited way than just consumer of the data rights. It's a monetary consumer. Can you point to me in the specification? Yes. For example, Your Honor, in Column 5, Line 39, the patent states, as noted above, typical business models for distributing digital content include plural parties, such as owners, publishers, distributors, and users. Each of these parties can act as a supplier granting rights to a consumer downstream in the distribution channel. And it's referring there to typical business models. But you want us to read consumer as a purchaser. No, Your Honor. Because a consumer can just simply mean somebody who uses or possesses and makes use of some of these rights. I am not asking the court to find that a consumer is a purchaser. But what they are, according to the specification, is a party to a business model that uses the invention. Yes. I say that because when I look at the summary of the invention at 94, Line 53, Column 2, and it's talking about the exemplary embodiments of this, there's nothing there that has a dollar sign to it. Agreed, Your Honor. But a party to a business model in this might not necessarily transfer money. So it is a case that this can be used somewhere down the line where money can be said to exchange as a result of the granting of rights. But the granting of rights itself, that's what the invention is about. Yes, but there's— It's not to verify payment. No, but let me give an example, Your Honor. Or to assure that payment has been made. It has nothing to do with the payment. It's all about the rights itself vesting in other parties. And let me give an example, Your Honor, to address the concern about payment. It's frequently done, for example, that you might give somebody a free chapter of a book without requiring any payment of money to induce them to later purchase either that book or a different book. You might give 30 seconds of a song for free so somebody can hear the song, hear the artist, and maybe later make a purchase. But this pattern is—in the examples you're giving, isn't this pattern used to make the granting of the rights, whether it's free or not, to make sure that the party, the person consuming the content, that that person has the right to consume? And that's not related to payment, not as far as invention is concerned. You're correct, Your Honor, that it's not necessarily related to payment, but it is related to a business model when the claim is restricted to the supplier and consumer interaction. It's not just a general user or a general recipient of rights. I mean, eventually a distributor can tell their consumer, I want you to give me $2 and I'll let you download this particular song, or you can read the book for $2. But the person, the distributor can also say, you don't have to give me any money. In fact, it's free. You can download it and your nephew can download it wherever he wants. But as long as what this pattern does, it makes sure that the distributor has granted that consumer that particular right to the metarights. That's correct, Your Honor. And as has been established in the case law of Versada and Calypso, actual exchange of money is not necessarily required. And in O.R. we say that even though there may be an exchange of money, that necessarily does not turn something into a CBM. Agreed, Your Honor. The question is whether or not the claims are requiring activity that is financial in nature. And when the specification makes clear that the supplier-consumer interaction is a business model, it's meant to define a business model using these features, it is making clear that this claim is directed to activity that is financial in nature. And, in fact, to address the point about – I want to ask you this. What happens if – because these claims clearly don't specifically address the financial in nature. You have to read them in the light of the specification to get there. What if we disagree with you that the specification isn't only about consumers in that kind of business model sense that you're pointing to? Because I think there are other parts that suggest non-monetary uses of this data rights management. If the claims encompass both financial and non-financial products, does that qualify for a CBM? I believe it does, Your Honor. I believe as long as there is activity that is financial in nature that is encompassed by the claims, there's not a requirement under the statute or the definition that says it can only be financial in nature activity. But there does have to be some confidence that it's directed principally to financial in nature activity. There's virtually any type of claim other than one that says specify an exchange of dollars for a service that might encompass activities that are not – do not involve monetary exchange, but that still would be considered CBM eligible. For example, in – I'm only responding to what's stated in the patent itself where it defines that business models are how this is used, and then it goes on to say that suppliers and consumers are the participants in those business models. Rights consumers and rights suppliers. You keep saying consumers, but you're leaving out the word rights, which to me at least is a very important feature of the definition that's used in the – or at least the phrase that's used in the claims. Because that – if it just said consumers, then I'd be much more sympathetically inclined towards your position. But rights consumers and rights suppliers seems to me to focus on the transfer of the right, not something that is inherently financial. That's my problem with your position. Again, Your Honor, I appreciate that. And obviously the guidance from the court has been that you have to look at the specification terms to understand the claim terms. And here when the claim terms use those terms rights consumer and rights supplier, you go back and look, well, what were they intending to encompass by that? And it looks in the specification in column 5 and column 6 where they introduce that notion of consumer that these are in what they call typical business models. So, again, when you look in total at the patent in light of the claim terms that they chose, it appears the board is correct when it made the separate finding that these are financial in nature. Okay. You're into your rebuttal time, and so let's hear from the other side now. Thank you, Your Honor. May it please the court. The USPO's exercise of jurisdiction here was improper because the 280 patent is not a CBM patent. The institution decision and the final written decision both came out prior to unwarranted plan and secure access. It's clear that the board made the exact same errors in this case as had been made in those two cases. Specifically, rather than applying- On unwarranted plan, when we found that they used the wrong standard, we vacated and remanded, right? You did. An application, why shouldn't we do that here? I think this case aligns much more closely with the situation in secure access. The secure access was vacated. That's no longer a precedent at this court. We don't have to follow it. Well, in the secure access case, in unwarranted plan, there was a claim- Sure, I get it. This case, to me, seems clearly the board made the same error it did in unwarranted plan, which was use the incidental language. Through no fault of their own, it was pre-unwarranted plan, and they had no direction from us. And there we vacated and remanded for them to make a proper determination under the proper standard. Secure access came along, and if it was still good law, I think you'd probably have a pretty good case for us just reversing outright. But how do we know, given that the specification is not just a couple isolated incidents of payment of money. It is replete with references to licensing fees and the like. I mean, I've read it, or I've read parts of it, and it's paragraph after paragraph of talking about how this can be used to control data rights in the context of paying for them. Shouldn't the board be the one to determine whether this is a CBM in the first instance? I don't believe so, Your Honor, based on the facts of this case. And the facts of this case align very closely with the facts of secure access. In the secure access – Well, you're not going to convince me by arguing what is secure access because it's not good precedent, and I dissented from the denial of re-hearing on Bach, and I don't think it's right. So if I don't have to follow it, I'm not going to follow it. Okay, understood. I don't speak for my colleagues, and if you want to argue it, you can. But I don't think that that's the right look. Secure access looked at the claims and determined whether the claims themselves were purely financial. I think we get to look at the specification. So you need to argue the specification to me. Okay. The specification in this case confirms that the claimed invention is context neutral. That is a very important point under the holdings of Unwarried Planet and secure access. The claims themselves point out, recite the transfer of rights between a rights consumer, a rights supplier, and a rights consumer. There is no other language in any of the claims within the express language of the claims themselves that confines that transaction to any financial setting. I agree entirely. The specification – The specification is overwhelmingly directed to licensing fees and the like, is it not? There are some stray examples of hospital records, university students, and the like. But over and over again, it references fees for licensing and fees for these data rights. It does, and we don't deny that. But – Let me ask you this hypothetical. If the only examples, even though the claims themselves did not include anything talking about licensing fees, if the only examples in the specification were financial in nature and were directed to licensing fees and how you pay for data rights and how you distribute data rights, would that be a CBM patent? The answer I would give is the analysis would require to conduct a Phillips claim construction analysis of the claim in light of that specification. And if under principles of claim construction, it was appropriate to limit the claims, even a single term from the claims, to a financial setting – Okay, I get that. What if the claims include – I'm going to ask you the same question I asked your friend. What if the claims cover both financial and non-financial products? Then it's not a CBM, and here's why. Because, as I understand your question, if the claim can cover both financial and non-financial, that necessarily means the claim does not require financial. The law, as I understand it, that this court provided us in Unwired Planet and Secure Access, is that we have to determine whether it's a CBM patent based on what the claims require. And to patent practitioners, we understand require means there is – Can I flip with the legislative history? I mean, what Congress was concerned about here was not just a very narrow category of patents. I mean, you look at the legislative history, and they were concerned about very broadly, generically worded business method patents being wielded against defendants in ways that inhibited business. And indeed, I think the legislative history – and I think this is in Judge Lurie's dissent in Secure Access – noted that one of the claims itself wasn't financial in nature that they were concerned about, and under Secure Access wouldn't have been invalidated. That sounds to me like you're making the same argument, that unless the claim is specifically only construed as financial, that that's the only way it's a CBM. I don't see that that's consistent with the legislative history here. Well, the definition itself refers to patents that claim a method or corresponding apparatus. So the word claim is in the definition. Sure, but we have to look at what they're saying, or at least I look at what they're saying in the legislative history. In the case they were most concerned about, one of the independent claims was not on its face directed to a claim for money or financial activity. Now, if you read it in the context of the specification, it clearly could be asserted against business methods. And that's – why isn't that same principle here? You're absolutely right. These claims are written very broadly and generically to cover data rights, and it doesn't specifically say licensing fees, but it certainly is going to be asserted against data rights management in the context of providing content for money. Because that's almost – I mean, again, your specification is replete with those examples. Well, I would say a couple of things. First of all, there only needs to be one claim in the patent that claims a financial activity. So if there's even one claim, then that patent should qualify as a CBM if it does claim some sort of financial activity. But there has to be – the reason I agree it's good policy to require, and also consistent with the statutory definition, to require some specific financial activity element in the claim is because the CBM definition that Congress provided says that it's limited to patents that claim a method or apparatus for performing data processing or other operations in the practice of financial product or service. And so if – may I finish? Yes, please. So, sure, there can be a claim that could cover a financial implementation or a non-financial implementation. But because such a claim, like the claims in this patent, can cover a non-financial situation, a non-financial implementation, that's because financial is not required in the claim. It's not recited. I'm unclear as to exactly the line that you're drawing here with respect to claims that are directed both to financial and non-financial activities. Suppose you had a claim that said – suppose you took this claim and the claim were a little more elaborate and it said this is principally to be used for – this is bad claim drafting, but I'm going to put it in anyway – determinations, but can be used for other purposes as well. So that there's clearly a reference in the claim to financial activity, but the claim makes it possible to have a different application of the claim as well. Are you saying that that would not be a CBM because of the reference to some potential non-financial activity? It really depends on the language of the claim. If the claim you're describing requires – No, it's saying that it is required to have rights, consumers and rights suppliers, normally in connection with the obtaining of fees, although it can have some non-fee related uses as well. I'm not entirely certain that type of a claim would be permitted because it sounds a little indefinite to me. You know what? Every now and then a terrible claim gets through the PTO. So let's assume my claim got through the PTO. That sounds like a difficult claim to analyze because it's unclear from my understanding of your question whether the financial activity that you're alluding to in this claim is an actual claim limitation that is required in order to infringe. I mean, it's the infringement analysis. If something is recited in the claim, then that claim is only infringed if the accused method or process actually performs that step. If the step were explicit with respect to finance but there were an alternative in the claim that did not require financial activity, you would say that is not qualified because it is possible to infringe the claim without engaging in financial activity. Is that your position? I'm not sure you can have a claim like that because I suppose if you have a claim with an optional limitation, if the financial limitation is optional, then... It's explicit but not necessary to infringe. I'm having real trouble with that, Your Honor, because if it's explicit, I think it is necessary to find infringement. And what we are not saying is it has to be... And I'm surprised you don't understand or want to answer that question. The reason I say that is because what we have here is almost in the opposite of that. If you look at how this invention describes itself in the field of invention, it says the present invention generally relates to the rights transfer and more particular to a method, system, and device for managing the transfer of rights. It doesn't say anything about fees or fee determinations or fee verifications or the transfer of money. No, this does not make any reference to anything that's financial in nature. That puts you on the other side of the fence of what Judge Bryson was asking you. If it was the opposite, if it did mention it's all financial in nature, you can also use it for non-financial purposes. Does that make it a non-CDM? You're asking if the specification said it's primarily financial, but it could be used for non-financial? Go back to Judge Bryson's scenario. I'm sorry, though. I'm sorry. But if one of the claims, if everything is financial in nature, but one of the claims includes a step or mentions a method that's non-financial in nature, does that one isolated portion of the claim render the entire patent non-CBM? No, it does not. As long as at least one claim has even one limitation that either expressly recites a financial activity of some sort or through proper claim construction, based on the specification, is properly interpreted to be in the financial realm. And we agree that financial is a fairly broad concept. We're not saying it has to be a payment of a fee or the transfer of money. We're not arguing that it has to be a specific type of financial activity. It doesn't have to be limited to banks or anything like that. But it has to be somewhere in the realm of a financial activity. So let me ask you a slightly different hypothetical. Suppose you have claims that on their face don't appear to be directed to a financial product but can be used in a financial product. And then you go to the summary of the invention, the examples, and everything, and every single thing that's talked about is financial in nature. Is that a CBM patent? If, based on those facts, it is proper to interpret even a single word of the claim as being in a financial realm, then, yes, it's a CBM patent. So same scenario, but at the very tail end of the specification, it has one sentence that says, there may be possible other non-financial uses of this invention. Does that take it out of the CBM realm? Probably not because it sounds to me from the facts you're portraying that that would be the type of specification that would likely be construed under Phillips as having implicitly defined at least one term as being a financial term because it's consistently used throughout the entire specification, and the real invention is all financial. You can't just have that boilerplate at the end that says, well, there's a whole bunch of— I get it. I get your answer. Let me take the hypothetical one step further. Instead of just saying there may be other possible uses, it says, after listing 50 financial uses, it says, here is one non-financial use and actually gives an example. Does that take it out of the CBM sphere? That sounds like a closer call on whether the claim would be interpreted under Phillips to be limited to financial. If there's 50 examples that are all financial and only one that's non-financial, it could be a claim, properly interpreted, that actually excludes that one non-financial embodiment. The law obviously recognizes that in some cases, a claim may exclude certain disclosed embodiments, and if it's appropriate to interpret that claim— Let's just assume it doesn't exclude that embodiment, that that embodiment is a proper embodiment. Do you think Congress intended for these kind of patents that are almost overwhelmingly financial in nature to evade CBM review because there's one non-financial embodiment? I think Congress intended to answer the question based on the requirements of the claim, and if the requirements of the claim as construed under Phillips based on the specification include even a single financial component, then it's a CBM patent. In this case, we don't have a— I respectfully disagree with the characterizations that the specification is primarily financial. There are numerous specific scenarios disclosed that are non-financial. There are also six or seven figures that go through the flow of how meta-rights are created and transferred in detail. The book club example, Alice transferring rights from her PDA to her laptop, not a single one of those examples has any financial step, no payment of fees, no crediting of an account. The arguments that— I think we have your argument. You're well into your buttock time, and I don't want to waste your time. Thank you very much, Your Honor. Let's go back to the other side. I'm going to restore you back, Mr. Yocum, to your three minutes, original three minutes. Thank you very much, Your Honor. Just to conclude this argument, Your Honors, on page 13 and 14 of the appendix, the final written decision, the board made specific findings that these were CBM patents and were financial in nature. That remains still good law even after unwired planet, that that's part of the standard. That is not an arbitrary or capricious finding because— To what extent does a final written decision rely on the incidental to language? It didn't walk away from it, did it? I mean, it tries to build on top of it. Correct. There were three— So is this a house built on shifting sand, so to speak? No, Your Honor. There were three elements that would allow you to find for a CBM patent even before unwired planet, and that was financial in nature activity, incidental to activity, or complementary to activity. After unwired planet, we know that incidental to and complementary to are no longer sound bases to find CBM, but the board did not restrict itself to those two. It did make findings on those two, which can be disregarded in light of unwired planet, but it made separate findings that use the proper standard that remains, in effect, of financial in nature. And that appears specifically on pages 13 and 14. Why is it that the board didn't disregard it? Is it because unwired came after this, after the final written decision? That's not the case, is it? Well, they sort of adopted a belt and suspenders approach at the board where they found at all three levels the financial inactivity, incidental to, and complementary to. Incidental is not a good suspender. I mean, it's not going to hold up the pants in this situation. Agreed, Your Honor. Can you clarify? I thought the board decision in this case came before unwired planet was issued. It did. Yes, it did, and perhaps I misunderstood the question. You did misunderstand. I apologize very much, Your Honor. Yeah, this came after, so it was applying the standard. The board wasn't ignoring it before. I meant unwired planet came after. I apologize. Unwired planet came after, and as a result, the board, when it was dealing with its decision, was still presented with the three different ways you could find CBM eligibility, so that was fine. I'm not really sure how they would have decided it without the incidental part. Why isn't that all intertwined with their analysis here? You want to parse it up and say they decided under these three standards. I don't see that. I think they decided under their interpretation at the time, which we have since corrected. Your Honor, I can only go by what the specific words and findings of the board are, and on page 13 and 14, they specifically invoke the financial and nature element, not the incidental to or complementary to language, which has been now disavowed by unwired planet. So I can only take the board at its word and determine that, in fact, it was not arbitrary capricious because it looked at the entire specification. It looked at the words and the claims in light of the specification, and it determined specifically that as a result of reading them all together, that this patent was, in fact, directed to activity that was financial in nature. Even if it did not specifically require payment, it did say, as has been said in Versada and in Blue Calypso, that merely requiring payment is not necessary for CBM eligibility. There must be just financial in nature activity, and here the specification as a whole indicates that this is financial in nature. All right. Thank you, Your Honor. We have that, Mr. Maloney. We have two bills. Thank you very much, Your Honor. I disagree with the characterization of what the board did. I believe the portion of the final written decision that counsel just referred to, it's not referring to the claims. It says the specification of the 280 patent reinforces that this consumer-supplier relationship, at least in some instances, requires the payment of a fee or the processing by a clearinghouse, both of which are activities that are financial in nature. That's just another place where the board looked at the specification and said, in some instances, the invention can be practiced in a manner that includes payment of a fee or processing of a fee. But it never made any finding that the claims actually require this, and it never construed the claims to require payment of a fee or processing by a clearinghouse or any other type of financial activity. It was never construed in the claims based on the specification. So those comments were consistent with the board's other findings that the specification teaches, in some instances, the invention can be practiced in a financial manner. But our point, again, is that under the law, as set forth in the two recent decisions, we have to look at the claims, and if the claims are properly interpreted to require financial activity, then it's a CBM patent. But if they're not, then it is not a CBM patent. And we submit to this court that these claims are very clear on their face, and the fact that the specification discloses that both financial and non-financial embodiments are not only possible but expressly contemplated by this invention, that there's no basis to construe the claims narrowly. I'm sorry, Your Honor. That's all right. What do you think is the best authority? You've predicated your argument largely on the Phillips theory, we'll call it. What is the best source of support for the Phillips approach to the use that can be made of the specification? It's quite evident to me that the biggest difference between you and your opposing counsel is the extent to which we can rely on the specification. You say only to the extent that it dictates how under Phillips the claim would be construed. They suggest at least that that's broader. What case do you point to for your best support? Is that in Secure Access? It's in both Secure Access and in Unwared Planet. I think it's more explicit in Secure Access. Yeah, I thought so. Where is it in Unwared Planet? Well, let me walk back from that slightly. I believe in Unwared Planet the point is made maybe a little less directly, and specifically what I'm referring to is the Court's comment in Unwared Planet at 1382, so 841 F3rd 1382. It cannot be the case that a patent covering a method in corresponding apparatus becomes a CBM patent because its practice could involve a potential sale of a good or a service. Well, that doesn't really. And that was in the context of arguments that this disclosure of the patent in Unwared Planet included suggestions of using the invention in a financial context. But that's responding, I mean that's in the context of getting rid of the incidental to language. And there's a difference between something being incidental to and directed to, isn't there? I believe, yes. I think there's probably a difficult issue here that the Court may have resolved in Secure Access but may have to resolve again, which is whether claims that are directed to financial activities but not limited to are a CBM patent. It doesn't seem to me in Unwired Planet we were saying that. We were talking about things that were purely, nearly incidental to, not necessarily directed to. Okay. Can I refer? When you say that that's because in Unwired Planet the Court was looking at the actual claim language and seeing if there's any claim term in the claims that would disclose or embrace as a financial element and the fact if it doesn't, as I think is the case here, if it doesn't and you look at the specification and you say, well, but if you look at the specification and the specification hints or says that there can be financial transactions involved in the implementation of the patent, Unwired takes us back and looks and says that's not enough. The claims have got to have an element, a financial element in them. Can you point to language in Unwired that says that? It doesn't say that directly, Your Honor. I am inferring from the observation of the Court in Unwired Planet that the disclosure of that patent indicated that the client application could be of a hotel or a restaurant that's trying to advertise to people who are in the vicinity. Which precedes Unwired and therefore would be binding on Versada makes it clear that the financial nature has to be in the claims. I don't think Versada candidly directly addresses this issue. Versada by my reading and as we pointed out in our brief. Versada at least noted that this was a very broad authority. Financial is broad. The holding in Versada as you know was that it is not limited to patents owned by financial institutions or products and services of financial institutions. But in Secure Access this Court pointed out Versada didn't have before it the need to address the scope of the definition of a CBM patent in the way that Secure Access did. And if I could also in responding again a little bit more to your question, Judge Bryson, in Secure Access. Yeah, I was going to ask exactly that. Secure Access says at 13. I think you're right that there is a reference. I just couldn't find it. Okay. What page? At page 1378 and I think it's carrying over to 1379. Right. Yes, I see the reference to Phillips. Yeah, that's the paragraph. It's the written description alone cannot substitute for what may be missing in the patent claims and therefore does not in isolation determine CBM status. And I believe it's on 1381, although I don't have the exact quote here, Your Honor. There is a quote along the lines that the proper question is whether when properly construed in light of the written description, the language of the claims affirmatively requires one or more of the wide range of financial activities. So the range of financial activities is very wide, but the claim has to require at least one of those and that determination is made by looking not only at the express claim language, but the written description to see if there's a basis to construe the claim to cover at least one of those financial activities. That's where we get our argument from. Thank you very much. All right. We thank the Court for the arguments.